MAY 15 2026 AM 11:31
FILED - USDC - FLMD - TPA

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

FREDDY RUSSIAN,

    Plaintiff,

v.

UNITED STATES TENNIS ASSOCIATION-FLORIDA SECTION, INC.
d/b/a USTA FLORIDA;
USTA-FLORIDA SECTION FOUNDATION, INC.;
UNITED STATES TENNIS ASSOCIATION INCORPORATED;
ANDREA S. HIRSCH, Chief Operating Officer and General Counsel,
in her official capacity to the extent applicable;
BRANDON BUKSBAUM, individually and in his official capacity; and
ASHLEY MILLER, individually and in her official capacity,

    Defendants.

_____/

Case No.: 8:26- CV-1464-WFJ-AAS

## VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Freddy Russian, proceeding pro se, files this Verified Complaint against Defendants. Plaintiff alleges discrimination, retaliation, selective enforcement, unfair disciplinary procedures, defamation, negligent supervision, emotional distress, breach of league-related contractual duties, and, in the alternative if state action is established, retaliation for protected speech and petition activity under the First Amendment. Plaintiff alleges as follows:

### INTRODUCTION

1. This case arises from Defendants' discriminatory, retaliatory, selective, exclusionary, and unfair disciplinary actions against Plaintiff, a long-standing Latino USTA league captain in Hillsborough County, Florida.

2. Plaintiff alleges that Defendants punished him and his team through misleading public communications and disciplinary escalation despite Plaintiff's repeated good-faith efforts to preserve league play, field available lines, work with opposing captains, and complete matches wherever possible.



3. Plaintiff alleges that Defendants ignored mitigating evidence, refused meaningful direct communication, failed to provide a fair opportunity to be heard, and escalated discipline only after Plaintiff requested supervisory review, legal counsel contact information, and stated his intent to file a formal complaint.

4. Plaintiff alleges that Defendants treated him differently because he is Latino, selectively enforced rules against him, and used a grievance process to isolate him, damage his reputation, and push him out of equal participation within USTA league tennis.

5. Plaintiff further alleges that after he expressed his opinion and invoked his rights as a U.S. citizen, including his right to complain, speak, petition, and seek legal review, Defendants used that expression as a pretext for retaliation instead of addressing the underlying fairness, discrimination, and accommodation issues.

6. Plaintiff seeks compensatory damages, punitive damages where permitted, declaratory relief, injunctive relief, preservation of evidence, production of comparable default and disciplinary records nationwide, costs, and all other relief the Court finds just and proper.

## JURISDICTION AND VENUE

7. This Court has federal-question jurisdiction under 28 U.S.C. Section 1331 because Plaintiff brings claims under federal civil-rights law, including 42 U.S.C. Section 1981 and, in the alternative if state action is established, 42 U.S.C. Section 1983 and the First Amendment.

8. This Court has supplemental jurisdiction under 28 U.S.C. Section 1367 over Plaintiff's related Florida-law claims because they arise from the same events, communications, disciplinary process, and damages described in this Complaint.

9. Venue is proper in the Middle District of Florida, Tampa Division, because substantial events giving rise to these claims occurred in Hillsborough County, Florida, including Plaintiff's league participation, communications, attempted coordination, injury-related lineup problems, and disciplinary consequences.

10. Defendants conduct or direct league-related activities in Florida, and the acts and omissions alleged in this Complaint caused injury to Plaintiff in Tampa, Florida.

## PARTIES AND SERVICE INFORMATION

11. Plaintiff Freddy Russian is a resident of Tampa, Hillsborough County, Florida.

12. Plaintiff's address is 7607 South Shamrock Road, Tampa, Florida 33616.

13. Plaintiff's telephone number is 813-527-1214.

14. Plaintiff's email address is farsrussian@yahoo.com.

15. Defendant United States Tennis Association-Florida Section, Inc., doing business as USTA Florida, conducts USTA league tennis operations within the State of Florida and is

responsible for Florida section league administration, local league coordination, grievance procedures, and related personnel acting within the USTA Florida system.

16. Defendant United States Tennis Association-Florida Section, Inc. and/or related USTA Florida entities may be served through the registered agent identified in Florida public records as Laura Bowen, c/o USTA Florida, 12005 Performance Drive, Orlando, Florida 32827. Plaintiff reserves the right to correct or supplement service information if corporate records identify a different exact registered agent or legal entity.

17. Defendant USTA-Florida Section Foundation, Inc. is a Florida not-for-profit corporation associated with USTA Florida and may be served through its registered agent, Laura Bowen, c/o USTA Florida, 12005 Performance Drive, Orlando, Florida 32827.

18. Defendant United States Tennis Association Incorporated operates and oversees USTA league activities nationwide. Plaintiff alleges that the national USTA system promulgates, approves, supervises, benefits from, and/or enforces league rules, grievance systems, and national policies affecting captains and participants throughout the United States.

19. Defendant United States Tennis Association Incorporated may be served through its principal offices and/or legal administration at 2500 Westchester Avenue, Suite 411, Purchase, New York 10577, including through Andrea S. Hirsch, Chief Operating Officer and General Counsel, to the extent permitted by law.

20. Defendant Andrea S. Hirsch is listed publicly as Chief Operating Officer and General Counsel of United States Tennis Association Incorporated. Plaintiff names her in her official capacity to the extent she has authority over legal administration, evidence preservation, corporate compliance, national grievance policies, or corrective injunctive relief. Plaintiff reserves the right to dismiss, amend, or clarify this party after corporate disclosures and discovery.

21. Defendant Brandon Buksbaum was, at all relevant times, acting as Local Play Coordinator for Hillsborough/Polk County within the USTA Florida system. Plaintiff sues Brandon Buksbaum individually and in his official capacity for actions taken personally and under color of authority delegated by USTA Florida and/or USTA.

22. Defendant Brandon Buksbaum may be served at Brandon Buksbaum, Local Play Coordinator - Hillsborough/Polk, USTA Florida, 12005 Performance Drive, Orlando, Florida 32827, email: buksbaum@ustaflorida.com. Plaintiff reserves the right to amend or supplement service information for Defendant Brandon Buksbaum upon discovery of additional service locations, authorized agents, waiver of service, or appearances by counsel.

23. Defendant Ashley Miller participated in, initiated, approved, supported, filed, and/or assisted in the grievance and disciplinary process relating to Plaintiff. Plaintiff sues Ashley

Miller individually and in her official capacity for her role in the grievance proceedings and disciplinary escalation.

24. Defendant Ashley Miller may be served through USTA Florida at Ashley Miller, c/o USTA Florida, 12005 Performance Drive, Orlando, Florida 32827. Plaintiff reserves the right to amend or supplement service information for Defendant Ashley Miller upon discovery of additional service locations, authorized agents, waiver of service, or appearances by counsel.

## FACTUAL ALLEGATIONS

25. Plaintiff has participated in USTA league tennis for many years and has served as captain in multiple divisions, including Adult 18 & Over, Adult 40 & Over, and 55 Combo leagues.

26. Before the events described in this Complaint, Plaintiff had not experienced disciplinary problems of this nature within USTA league tennis.

27. Plaintiff built a long-standing reputation through years of participation, leadership, sportsmanship, and commitment to USTA league competition.

28. In or around late April and early May 2026, Plaintiff's Adult 40 & Over 3.5 Men's team experienced unexpected roster shortages caused by player injuries, player unavailability, out-of-town players, and scheduling complications shortly before scheduled league competition.

29. Plaintiff acknowledges and accepts responsibility for being unable to field a complete lineup for the scheduled match; however, the inability to field a full lineup resulted from legitimate injuries, unavailability, and roster complications, not intentional refusal to compete.

30. Plaintiff did not abandon league play. Plaintiff repeatedly attempted in good faith to preserve competition, field available lines, and avoid unnecessary disruption to the league schedule.

31. Plaintiff communicated directly with opposing captains regarding lineup limitations and attempted to coordinate available matches and alternative solutions.

32. Plaintiff proposed multiple good-faith options, including allowing available players to travel during the week to opposing locations in order to complete outstanding lines and preserve competition whenever possible.

33. Plaintiff's communications with opposing captains show that he was willing to play available lines, complete additional lines when possible, and cooperate rather than simply default or abandon the match.

34. Text messages, emails, call logs, player communications, and related exhibits demonstrate Plaintiff's ongoing efforts to preserve league participation and resolve scheduling issues cooperatively.

35. Player communications also confirm that injuries materially affected Plaintiff's lineup. At least one expected player communicated that he could not play due to severe elbow pain and inability to hold a racquet.

36. Plaintiff also attempted direct telephone communication with Defendant Brandon Buksbaum in an effort to discuss the situation professionally, explain the circumstances, avoid unnecessary escalation, and preserve league competition.

37. Despite Plaintiff's direct and repeated efforts, Plaintiff was not provided a meaningful phone call, meeting, or fair opportunity to explain the situation before severe disciplinary actions and public communications were issued.

38. Defendant Brandon Buksbaum sent communications regarding Plaintiff's team and the alleged team default to other Adult 40 & Over 3.5 captains.

39. Plaintiff alleges that the communications sent to other captains were misleading, incomplete, selectively framed, and damaging because they did not fairly explain Plaintiff's injuries, roster shortages, efforts to communicate, willingness to play available lines, or attempts to arrange alternative completion of matches.

40. Plaintiff alleges that the public nature of the communications caused reputational damage within the USTA tennis community and made Plaintiff appear irresponsible, uncooperative, or noncompliant when the full facts showed good-faith efforts to play.

41. Plaintiff further alleges that the responsibilities of a USTA Local Play Coordinator and regional league administrator extend beyond merely enforcing league rules and imposing penalties.

42. Those responsibilities include promoting fair play, encouraging participation, assisting captains and players in resolving scheduling and roster conflicts, facilitating communication between teams, exercising reasonable discretion, and working cooperatively in good faith to preserve league competition whenever possible.

43. Rather than assisting in cooperative problem-solving or attempting to accommodate Plaintiff's documented good-faith efforts, Defendants escalated the matter through punitive enforcement measures, misleading communications, and exclusionary disciplinary actions.

44. Plaintiff alleges that Defendants failed to reasonably exercise discretion, failed to meaningfully communicate, failed to consider reasonable accommodations proposed by Plaintiff, and failed to uphold the broader duties of fairness, sportsmanship, participation, and cooperative league administration expected within USTA competition.

45. Plaintiff requested supervisory review, legal counsel contact information, and proper channels to file a formal complaint regarding USTA-related issues in the Hillsborough County League.

46. On or about May 8, 2026, Plaintiff emailed Defendant Brandon Buksbaum stating that he intended to file a formal complaint and requesting the full name, direct phone number, and email address of Brandon's supervisor, as well as USTA legal counsel or the appropriate legal department representative authorized to address formal disputes.

47. Defendant Brandon Buksbaum responded that Plaintiff's message had been passed to his supervisor and that the supervisor would be in contact with Plaintiff.

48. After Plaintiff requested supervisory review, legal contact information, and stated his intent to file a formal complaint, Defendants, including Brandon Buksbaum and/or Ashley Miller, filed, initiated, supported, or pursued a grievance against Plaintiff.

49. Plaintiff alleges that the grievance was filed or pursued in close temporal proximity to Plaintiff's protected complaint activity and was used as retaliation for Plaintiff's decision to challenge the process, request legal/supervisory contacts, and assert his rights.

50. The grievance focused on Plaintiff's frustrated expression and statements regarding his First Amendment rights while ignoring or minimizing Plaintiff's good-faith efforts to play, communicate, and complete available lines.

51. Plaintiff alleges that he clearly stated his opinion and invoked his rights as a U.S. citizen to speak, complain, petition, and seek legal review. Plaintiff's statement was an expression of frustration and protest regarding what he believed was unfair treatment; it was not a threat and did not justify retaliatory escalation, public humiliation, or discriminatory discipline.

52. To the extent Defendants claim Plaintiff's language was improper, Plaintiff alleges Defendants used that language as a pretext to punish him after he raised fairness concerns, requested legal and supervisory contact information, and stated his intent to file a formal complaint.

53. Plaintiff alleges that Defendants treated Plaintiff's isolated expression of frustration more severely than the underlying discriminatory, retaliatory, and unfair conduct directed toward Plaintiff, his team, and his reputation.

54. Plaintiff believes Defendants selectively enforced league regulations against him while similarly situated non-Latino captains and teams received lesser penalties, accommodations, warnings, informal resolutions, or no disciplinary action.

55. Plaintiff requests nationwide records and discovery relating to comparable team defaults, accommodations, grievances, disciplinary actions, warnings, and non-actions involving other USTA captains and teams throughout the United States to determine whether unequal, retaliatory, or discriminatory treatment occurred.

56. Plaintiff alleges that Defendants' conduct was motivated, at least in part, by discriminatory bias based upon Plaintiff's Latino ethnicity, ancestry, and national-origin-associated identity.

57. Plaintiff alleges that the disciplinary process isolated him, excluded him from equal participation, denied him meaningful procedural fairness, and caused him to feel segregated from fair treatment within the league community.

58. Defendants' actions caused Plaintiff reputational harm, public embarrassment, humiliation, anxiety, mental anguish, emotional distress, loss of enjoyment of league participation, and damage to Plaintiff's standing within the local and broader USTA tennis community.

59. Plaintiff alleges that Defendants' actions were unnecessarily punitive, retaliatory, disproportionate, and inconsistent with the stated purpose and spirit of USTA league tennis, which is intended to promote participation, inclusion, sportsmanship, and fair competition.

## LEGAL AUTHORITIES SUPPORTING PLAINTIFFS CLAIMS

60. Plaintiff includes the following legal authorities because he proceeds pro se and seeks to identify the legal basis for his claims at the pleading stage.

61. 42 U.S.C. Section 1981 protects the equal right to make and enforce contracts, including performance, modification, termination, and enjoyment of all benefits, privileges, terms, and conditions of a contractual relationship. Section 1981 protects those rights against nongovernmental discrimination as well as impairment under color of state law.

62. Runyon v. McCrary, 427 U.S. 160 (1976), recognizes that Section 1981 applies to private discrimination in contractual relationships.

63. Saint Francis College v. Al-Khazraji, 481 U.S. 604 (1987), recognizes that Section 1981 protects identifiable classes of persons subjected to intentional discrimination because of ancestry or ethnic characteristics. Plaintiff alleges discrimination based on Latino ethnicity and ancestry.

64. CBOCS West, Inc. v. Humphries, 553 U.S. 442 (2008), recognizes retaliation claims under Section 1981. Plaintiff alleges Defendants retaliated after he requested supervisory review, legal contacts, and stated his intent to file a formal complaint regarding discriminatory and unfair treatment.

65. Comcast Corp. v. National Association of African American-Owned Media, 589 U.S. 327 (2020), requires a Section 1981 plaintiff to plausibly allege that race or ethnicity was a but-for cause of the injury. Plaintiff alleges that his Latino ethnicity, combined with selective enforcement and retaliatory timing, was a but-for cause of the unequal treatment and discipline.

66. Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53 (2006), although arising under Title VII, supports the principle that retaliatory actions are actionable when they would deter a reasonable person from making or supporting a complaint. Plaintiff alleges Defendants' grievance, discipline, and public communications would deter a reasonable captain from asserting rights or complaining about discrimination.

67. Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274 (1977), provides the First Amendment retaliation framework when protected speech is a substantial or motivating factor in adverse action. Plaintiff pleads a First Amendment claim in the alternative if state action is established.

68. Bennett v. Hendrix, 423 F.3d 1247 (11th Cir. 2005), provides that retaliation sufficient to chill a person of ordinary firmness from exercising First Amendment rights can support a First Amendment retaliation claim. Plaintiff alleges the grievance and public discipline would chill an ordinary person from complaining, petitioning, or speaking about unfair treatment.

69. Brentwood Academy v. Tennessee Secondary School Athletic Association, 531 U.S. 288 (2001), recognizes that a nominally private athletic association may be treated as a state actor when there is pervasive entwinement with public institutions or officials. Plaintiff pleads state action in the alternative and seeks discovery concerning any USTA relationships with public facilities, governmental bodies, public-school or public-park tennis programs, delegated public functions, and public entwinement relevant to First Amendment and due-process issues.

70. Manhattan Community Access Corp. v. Halleck, 587 U.S. 802 (2019), recognizes that private entities are not ordinarily bound by the First Amendment unless state-action standards are met. Plaintiff therefore pleads the First Amendment claim in the alternative and also relies on the same facts to support Section 1981 retaliation and Florida-law claims.

71. Jews for Jesus, Inc. v. Rapp, 997 So. 2d 1098 (Fla. 2008), held that Florida does not recognize a separate false-light invasion-of-privacy tort. Plaintiff therefore pleads defamation/libel and reputational-harm theories rather than a separate false-light count.

## COUNT I
## DISCRIMINATION UNDER 42 U.S.C. SECTION 1981

72. Plaintiff realleges and incorporates all preceding paragraphs.

73. Plaintiff is Latino and alleges discrimination based on ethnicity, ancestry, and national-origin-associated identity protected by Section 1981 to the extent such discrimination is based on ethnic or ancestral characteristics.

74. Plaintiff participated in USTA league tennis as a registered captain and participant in a league system governed by membership terms, registration, league rules, captain responsibilities, benefits, privileges, and conditions of participation.

75. Defendants interfered with Plaintiff's enjoyment of league-related benefits, privileges, terms, conditions, and equal participation by selectively enforcing rules, imposing public disciplinary consequences, refusing meaningful communication, and damaging Plaintiff's standing within the league.

76. Defendants treated Plaintiff less favorably than similarly situated non-Latino captains and teams who experienced defaults, partial defaults, roster shortages, or scheduling issues but received accommodations, informal resolution, warnings, lesser penalties, or no discipline.

77. Plaintiff alleges that his Latino ethnicity and ancestry were a but-for cause of the selective and unequal treatment.

78. As a direct and proximate result, Plaintiff suffered reputational harm, humiliation, emotional distress, loss of league opportunities, loss of enjoyment, and other damages.

## COUNT II
## RETALIATION UNDER 42 U.S.C. SECTION 1981

79. Plaintiff realleges and incorporates all preceding paragraphs.

80. Plaintiff engaged in protected activity by objecting to unfair and discriminatory treatment, requesting supervisory review, requesting legal counsel contact information, and stating his intent to file a formal complaint.

81. Defendants knew of Plaintiff's protected activity because Plaintiff communicated directly with Defendant Brandon Buksbaum and requested that the matter be directed to the appropriate leadership and legal personnel.

82. After Plaintiff engaged in protected activity, Defendants escalated the matter through a grievance, public communications, disciplinary penalties, and reputationally damaging actions.

83. The temporal proximity between Plaintiff's request for supervisory/legal review and the grievance/disciplined escalation supports an inference of retaliatory motive.

84. Defendants' actions would deter a reasonable USTA captain from complaining about discrimination, challenging unequal treatment, requesting legal review, or asserting rights within the league system.

85. Plaintiff suffered damages including emotional distress, reputational harm, humiliation, lost participation benefits, and mental anguish.

## COUNT III
## DEFAMATION / LIBEL UNDER FLORIDA LAW

86. Plaintiff realleges and incorporates all preceding paragraphs.

87. Defendants published or caused to be published written communications to other captains and league participants concerning Plaintiff and Plaintiff's team.

88. Plaintiff alleges that the communications were misleading, incomplete, selectively framed, and created a false impression that Plaintiff abandoned league obligations or acted improperly without good-faith efforts to communicate, play available lines, and arrange alternative completion of matches.

89. The communications harmed Plaintiff's reputation in the USTA tennis community and tended to expose Plaintiff to embarrassment, contempt, distrust, or diminished standing among league captains, players, and administrators.

90. Defendants acted negligently, recklessly, and/or with knowledge of the incomplete and misleading nature of the communications because Defendants knew or should have known Plaintiff had attempted to coordinate, communicate, and preserve league play.

91. Plaintiff suffered reputational injury, humiliation, embarrassment, mental anguish, and damages.

## COUNT IV
## NEGLIGENCE AND NEGLIGENT SUPERVISION UNDER FLORIDA LAW

92. Plaintiff realleges and incorporates all preceding paragraphs.

93. USTA Florida, USTA, and related organizational Defendants owed Plaintiff duties to administer league participation, captain communications, grievance procedures, and disciplinary decisions with reasonable care, fairness, consistency, and non-discrimination.

94. Organizational Defendants also owed duties to reasonably train, supervise, and control personnel and representatives involved in local play coordination, grievance handling, public communications, and discipline.

95. Defendants breached those duties by failing to provide meaningful communication, failing to investigate mitigating facts, failing to consider accommodations, failing to supervise disciplinary communications, and allowing misleading and punitive escalation.

96. Defendants' breach caused Plaintiff reputational harm, emotional distress, loss of league benefits, and damages.

## COUNT V
## BREACH OF CONTRACT AND BREACH OF IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING

97. Plaintiff realleges and incorporates all preceding paragraphs.

98. Plaintiff participated in USTA league tennis as a registered player and captain subject to USTA league rules, procedures, captain responsibilities, grievance processes, and participation benefits.

99. Upon registration, payment of fees, acceptance of league rules, and participation as a captain, Plaintiff and Defendants entered a contractual or quasi-contractual relationship governing Plaintiff's rights and obligations in USTA league play.

100. Defendants breached the express or implied terms of that relationship, including the implied duty of good faith and fair dealing, by selectively enforcing rules, refusing reasonable communication, refusing to consider accommodations, issuing misleading public communications, and imposing disproportionate discipline.

101. Defendants' actions deprived Plaintiff of the benefits, privileges, and fair expectations of USTA league participation and captain service.

102. Plaintiff suffered damages as a result.

## COUNT VI
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

103. Plaintiff realleges and incorporates all preceding paragraphs.

104. Defendants engaged in retaliatory, exclusionary, publicly damaging, and knowingly harmful conduct directed toward Plaintiff after Plaintiff attempted to communicate, cooperate, and request formal review.

105. Defendants' conduct included public communications that damaged Plaintiff's reputation, grievance escalation after Plaintiff requested legal/supervisory contacts, refusal of meaningful dialogue, and disciplinary actions that isolated Plaintiff from equal participation.

106. Plaintiff alleges Defendants' conduct was outrageous or reckless in light of Plaintiff's long-standing history as a captain, his good-faith efforts to play available lines, his legitimate injury-related roster issues, and Defendants' knowledge of the harm caused by public discipline.

107. Defendants' conduct caused Plaintiff severe emotional distress, mental anguish, humiliation, anxiety, embarrassment, stress, and damage to Plaintiff's mental well-being.

## COUNT VII
## FIRST AMENDMENT RETALIATION UNDER 42 U.S.C. SECTION 1983 - PLEADED IN THE ALTERNATIVE IF STATE ACTION IS ESTABLISHED

108. Plaintiff realleges and incorporates all preceding paragraphs.

109. Plaintiff pleads this count in the alternative because Defendants may contend they are private actors. Plaintiff seeks discovery to determine whether Defendants' league administration, grievance enforcement, facilities, public partnerships, delegated authority, public entwinement, and regulatory functions establish state action under applicable law.

110. Plaintiff engaged in protected speech and petition activity by expressing his opinion, objecting to unfair treatment, requesting supervisory review, requesting legal counsel contact information, stating his intent to file a formal complaint, and invoking his rights as a U.S. citizen to speak, complain, and seek redress.

111. Plaintiff's statement referencing his First Amendment rights was an expression of protest, opinion, and intent to seek formal review; it was not a threat and did not justify retaliatory discipline.

112. After Plaintiff engaged in this protected speech and petition activity, Defendants filed, initiated, supported, or pursued a grievance and public disciplinary actions against Plaintiff.

113. The grievance and disciplinary actions were sufficiently adverse to chill a person of ordinary firmness from continuing to complain, speak, petition, request legal review, or challenge discrimination and selective enforcement.

114. Plaintiff's protected speech and petition activity were a substantial or motivating factor in Defendants' grievance and disciplinary escalation.

115. If Defendants are determined to be state actors, or if their conduct is fairly attributable to the State under a close-nexus, entwinement, public-function, or joint-action theory, Defendants violated Plaintiff's First Amendment rights.

116. In the alternative, even if state action is not established, the same facts support Plaintiff's Section 1981 retaliation, Florida-law tort, and contractual claims.

## COUNT VIII
## DECLARATORY AND INJUNCTIVE RELIEF

117. Plaintiff realleges and incorporates all preceding paragraphs.

118. An actual controversy exists concerning Defendants' discipline, grievance process, public communications, alleged selective enforcement, retaliation, and discriminatory treatment.

119. Plaintiff seeks a declaration that Defendants' disciplinary actions and public communications were unfair, retaliatory, discriminatory, selectively enforced, and/or otherwise unlawful.

120. Plaintiff seeks injunctive relief requiring Defendants to preserve evidence, correct or retract misleading records and communications, provide fair review, cease retaliatory and discriminatory conduct, and produce comparable disciplinary/default records necessary to evaluate selective enforcement.

121. Plaintiff seeks nationwide discovery of comparable USTA defaults, grievances, accommodations, penalties, warnings, standings removals, and non-actions involving captains and teams throughout the United States.

## EXHIBIT INDEX

**Exhibit A:** Email from Plaintiff requesting Brandon Buksbaum provide supervisor contact information and USTA legal counsel/legal department contact information, including notice of intent to file a formal complaint.

**Exhibit B:** Plaintiff's request for supervisor contact information and USTA legal counsel/ legal department contact information, including notice of intent to file a formal complaint, together with Brandon Buksbaum's response stating that Plaintiff's message had been passed to his supervisor.

**Exhibit C:** Grievance statement filed or pursued by Ashley Miller regarding Plaintiff and Plaintiff's team.

**Exhibit D:** Brandon text communication showing Brandon's request to confirm whether Plaintiff's team would be available for all five lines and Plaintiff's response confirming willingness to proceed.

**Exhibit E:** Brandon text communication showing further communication after Plaintiff read Brandon's email and stated that he would respond according to league guidelines.

Exhibit F: Opposing captain Luis communication showing continued expectations and coordination for Saturday match participation.

**Exhibit G-1:** Kevin communication showing court arrangements and Plaintiff's coordination with an opposing captain.

**Exhibit G-2:** Kevin communication showing Plaintiff notified the opposing captain of roster shortages and attempts to avoid unnecessary travel or disruption.

**Exhibit G-3:** Kevin communication showing Plaintiff proposed alternative arrangements, including available players traveling to the opposing location to make up lines during the week.

***Exhibit H:*** *Miguel Montoya injury message showing unexpected player injury and unavailability shortly before the scheduled match.*

***Exhibit I:*** *Call log showing Plaintiff's attempted direct call to Brandon Buksbaum before disciplinary escalation.*

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Enter judgment in favor of Plaintiff and against Defendants;

B. Award compensatory damages in an amount to be proven at trial;

C. Award punitive damages where permitted by law;

D. Award damages for emotional distress, humiliation, reputational harm, mental anguish, anxiety, loss of enjoyment, and damage to Plaintiff's public image and standing within the tennis community;

E. Declare that Defendants' actions were discriminatory, retaliatory, selectively enforced,

F. Order preservation of all relevant evidence, electronically stored information, text messages, emails, grievance materials, phone logs, disciplinary records, and comparable records;

G. Order production of records involving comparable disciplinary matters, defaults, grievances, accommodations, warnings, standings removals, and enforcement actions throughout the United States USTA system;

H. Order correction, removal, or retraction of misleading disciplinary records or public communications concerning Plaintiff and his team;

I. Grant injunctive relief preventing further retaliation, discrimination, or exclusionary conduct;

J. Award costs, pre-judgment interest where available, post-judgment interest, and any other relief the Court deems just and proper.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

## VERIFICATION

I, Freddy Russian, declare under penalty of perjury pursuant to 28 U.S.C. Section 1746 that I have reviewed this Verified Complaint and that the factual allegations are true and correct to the best of my knowledge, information, and belief.

Executed on this _15_ day of ___MAY___, 2026.

Respectfully submitted,

_____

Freddy Russian
7607 South Shamrock Road
Tampa, Florida 33616
813-527-1214
farsrussian@yahoo.com
Pro Se Plaintiff